Good morning. If it may please the Court, there is one issue before the Court in this matter. Speak right up. And the issue is what I feel like you're in front of a group of sixth graders who are not interested in particularly listening to an adult. You've got to grab their attention. Or at least one aging male who would appreciate you speaking louder. Very well. I apologize, Your Honors. That's not a problem. The issue before Absolutely common for people when they get up here to sort of lower their voice. But give it right out to them. I'll do my best, Your Honor. Thank you. Thank you. The issue before the Court this morning is whether or not the lead petitioner, Mr. Mata, received a full and fair hearing on the merits of his applications for asylum and withholding of removal under the Immigration and Nationality Act. At the time of his merits hearing through counsel, Mr. Mata attempted to submit ten supplementary exhibits to the record. The judge refused to admit these documents into the record. He refused to examine them to determine whether they were relevant to the case. He did not examine them to determine whether they were probative, as he did not insert them into the administrative record for it to be reviewed upon appeal. Do you regularly do the immigration work? I do, Your Honor. Do you have access to statistics on how often IJs are reversed? I believe I've seen some statistics before, Your Honor. Isn't this particular IJ kind of notorious in the system for being difficult, et cetera? I'm afraid he is, Your Honor. He has been cited by this Court in more than one case that I'm aware of. By name? By name, Your Honor. Go ahead. In addition, when the matter was appealed to the Board of Immigration Appeals, this issue was specifically raised to the BIA, that this evidence was attempted to be submitted into the record and the judge refused it. The BIA, the appellate body handling the appeal, did not even acknowledge that aspect of the brief, even though that was the majority of the brief which was submitted to the BIA. In fact, the BIA simply took the immigration judge's decision and, in fact, made a separate decision but was more in line with the decision of the immigration judge. And so doing it neglected to even explain its reasons for not even agreeing with the immigration judge on the underlying merits of the decision in the case. Did you present your, what you contend in your briefs to this Court, that there was a non-neutral fact finder by the judge's treatment, the questions he was asking and all of that, the way he handled that hearing? I didn't see that presented to the BIA. It was not specifically identified in the brief to the BIA, but the BIA was put on notice that there was a procedural due process issue in play, specifically the failure to admit the documents into evidence. The claim is broader. The claim is that the immigration judge denied the petitioners a full and fair hearing on the merits of the claim. Once it's notified of the due process violation, that is just one lesser included offense, as it were. I might so categorize it. But insofar as the BIA was aware of the fact that there was a procedural due process issue, it had the ability and the authority to correct that issue as well. You know, it's one thing to argue that an immigration judge made a mistake, that is forgot to or whatever identify a series of documents that the petitioner wanted to admit. That's certainly one thing. That could have occurred inadvertently by mistake, whatever. It's quite another thing to suggest that an immigration judge has completely abandoned their neutral position and rendered the hearing unfair. And how can a review agency like the BIA review that second thing I've described if you don't put it squarely in front of them? I understand. But it also encases, Your Honor, the entire case. It puts perspective on the case. Once the BIA became open. I would have thought if that was your contention, that this judge behaved horribly and stepped outside the neutral role, that the failure to identify the documents would have been a subset of that, not the other way around. That's what you're arguing now. Plus the two issues actually interrelate, Your Honor. But why not? I mean, why not just put it right before the BIA? The worst that can happen is that they say, no, it's okay. I agree. It should have been. And you've got it teed up for the Court of Appeals to take a look at it. That's correct. But nevertheless, it's an issue that any appellate body reviewing the record should have recognized. It's already being argued that there's a due process violation here. And if any time is spent with the record, they're going to notice the repeated instances in which the immigration judge did not. I know that this is a hypothetical question, but if this immigration judge had inappropriately shifted the burden of proof, that would be a due process violation if it could be established. And would you say that because you raised a failure to identify evidence, that that would necessarily bring to the attention of the BIA, and therefore us, that kind of due process violation? I believe that's arguable. It's not as though there was a separate non-due process issue. If the original appeal had been on a non-due process issue. Let's try this. If the immigration judge refused to allow the petitioner to testify, and at the same time failed to identify some documents, and you only brought the failure to identify the documents up before the BIA, and then appealed from that, could this court look at the IJ's failure to even allow your client to testify? I believe so because they both still fall under the gambit of a due process violation. And I would also like to point out that these two concepts are interrelated. The judge did not want to admit the additional ten documents that were proffered by the petitioners on the day of the hearing. Yet later on in the hearing, the immigration judge himself attempted to do that very same thing when he attempted to submit a New York Times article into the record in an attempt to impeach the lead petitioner in this matter, Mr. Mata. So insofar as that issue falls over into the neutral fact finder issue, it is intimately related to the initial issue about the admission of the ten documents into the record. Do you want to save some time for rebuttal? Please, Your Honor. Thank you. Counsel? Good morning. May it please the court, my name is Cindy Farrier and I'll be representing the government in this matter. Hello again. Welcome back. Yes. As you've mentioned or as you've recognized, the petitioner did not raise the procedural violation of the judge's bias or interference in the testimony in regard to his particular challenges to the board. And that is something that the board could have addressed. This court has considered liberally the allegations made in notices of appeal or briefs, generally speaking with regard to a pro se alien. Here the alien was represented by counsel the entire time. If these allegations were something that they wanted the board to focus on, they could have raised them with specificity in the brief to the board. He's got a point, doesn't he, that on the one hand you have the judge not allowing documents in and then on the other hand reaching in his kit bag and pulling out a New York Times article for the purpose of impeaching the petitioner's testimony. He's got a point, doesn't he? That is a point that the IJ did, upon petitioner's objection, did recognize that he actually did not have the authority to do that, to introduce the evidence on his own. So he did not introduce that evidence. And that's why it was critical that he would bring up such challenges to the board in their brief on appeal because if, in fact, he found that to still prejudice his case in some way, he should have made that known to the board. Rather, the board looked at the evidence in the record and found that, in fact, it was sufficient in order to uphold the IJ's decision in this case. If we were to remand this to the BIA and then back to the IJ to allow the petitioner to identify the documents, et cetera, understanding that the other issue, abandoning neutral position, may have been waived, could we take into consideration the entirety of the transcript in connection with which particular IJ might hear this matter on remand? You mean to give some sort of instruction that it be assigned to a different judge? Yes. I don't know that this Court has done that. I do know that the Seventh Circuit has done that on occasion, has remanded with instruction to assign it to a different IJ. This guy's pretty notorious, isn't he? Well, you've pointed him out. Was that the Second or the Seventh? The Seventh. The Seventh, yes. Can I ask you a related question where this Court has had internal discussion, and that is whether we should regularly identify the IJ. Now, you know we do that with district judges. We always say who the district judge was, so people who are doing a good job are recognized and those who are not doing so well are recognized. Would it help the Justice Department if we regularly identified the IJs? I'm sorry, I can't speak to that issue. You haven't thought about it? I haven't thought about it, actually. How long have you been doing this kind of work? Six years. Well, what's your gut reaction? Would it be helpful for you to know who we think are good judges and who aren't? I think her response is that that's above her pay grade. Yes. Important people are paid to decide those issues. Well, I'm not asking you to speak for the Department, but just as a practitioner. As a practitioner, I don't need to know it because I'm actually reading the record and I see which judges are involved. So I don't particularly, from the government's perspective, need to know what judge is doing what. So that would be something that's a policy decision that the Court, as well in conjunction with the Justice Department, could maybe discuss. And so I've mentioned the procedural due process error with regard to the documents here. The petitioner hasn't identified those with any particularity. I understand his argument that he believes that he cannot attach those documents to show them to the Board on appeal because the Board doesn't accept new evidence on appeal. However, he could at the very least have described what the documents were, if only so that the Board could have seen that those documents were, in fact, different from the 13 documents that were already in the record with regard to country conditions. Whose responsibility is it to make sure that the record is complete ultimately? Well, the burden to show that they are- Not to show. Whose responsibility is it to make sure the record is complete in connection with what goes on in the courtroom? In connection with what goes on in the courtroom, the immigration judge does need to make sure that the record is complete as far as what is submitted and what is presented to him. Understanding that, how can the BIA or this Court determine what impact, if any, these documents have when they were never identified? When they were never identified? Yeah. Well, that is the Court has-this Court has recognized that in order to make out a claim per due process, you do need to show that there was some prejudice. And here- Well, there's prejudice to us. My understanding, correct me if I'm wrong, the normal procedure is the IJ holds a hearing. There's a recorded transcript, correct? Correct. That recorded transcript goes off to some other location and is transcribed. Yes. And the IJ almost never sees it before the case goes up to the BIA. Does not see the transcript of the hearing? Yes. I believe that's correct. I believe he only sees the transcript of his decision. Yes. What he said in terms of I deny, I grant, whatever. Yes, I believe that that's true. The content of the hearing, the testimony, the evidence that's offered, how it was identified, et cetera, is in this transcript, which the IJ never sees. I believe that that is correct. Shouldn't that heighten the burden of the IJ to make sure that whether the evidence offered is identified and in the record so reviewing agencies and courts can make an assessment of the prejudice, if any, from the failure to admit? Well, so you're suggesting that the IJ should have made sure that the nature of the documents were summarized prior to his exclusion of those documents or his decision not to admit those documents. Yes. Well, in this case, I'm not sure that it was ever, I'm not sure that they were actually presented to the immigration judge to review. I'm not certain what the IJ's response was. I think he said that he would not look at those documents because there were 10 additional documents being submitted on the very day that the hearing was set to go forward on the merits of the case. So I. In any court anywhere, even where there is not a pretrial order, when a counsel shows up with documents, the court can certainly exercise its discretion to exclude them, but we would be able to see what they were. And here we can. I see. Well, in this case, I don't think that it would have been any more difficult for the alien to identify those documents to the board in their briefs on appeal. And that's the nature of our argument. Okay. But the question Judge Hawkins was pursuing was who had the responsibility. Can't you answer that question? Well, I think I answered the question that it's the alien's burden to show eligibility for asylum and it's the IJ's burden. No, you had the responsibility for identifying the documents in the record. Well, I think I did respond. I do believe that it is the immigration judge's responsibility to make sure that the hearing is complete and the submission of the documents is complete.  I just have a question, Your Honor. Now, ordinarily, we do not permit a counsel different than the counsel who argued to argue rebuttal. Well, if that is the case, then. Do you care? You guys care? I'm going to let him talk. Okay. That wasn't. Okay. No, no. That's fine. Go ahead. My colleagues say we should let you. Mark Marlinson, therefore. Okay. Just keep that in the mind the next time you argue. Certainly, Your Honor. No designated hitters at the Ninth Circuit. Just a couple of very brief points. With regard to the first question at the court address to my colleague as to whether or not this case would be remanded to that specific immigration judge, that would not be possible because he is now retired. He's retired? He has retired, yes. With regard to the identification of the documents, I believe the documents were identified by counsel for Mr. Mata at the hearing. As 10 articles from various journalistic sources, which identified the religious group of Coptic Christians as subject of pattern and practice of persecution in his native country. And as such, that type of documentation would be relevant under this court's holdings in Sale and Ligoyen, which specifically addresses the issue of balancing the individual persecution suffered by the petitioner and the country conditions as they affect a specific insular minority to which the Coptic Christians in this case. So although the documentation might have been cumulative to a certain extent, it certainly goes to the issue of weight and for the judge to have totally disregarded that in one fell swoop. We think that that was inappropriate and denied the petitioner the opportunity to at least have the test in Ligoyen and Sale applied. All right. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision and will proceed to the next case on the calendar, which is Felibus versus Ashcroft. Ms. Ferrier, you just don't move. Should we be amending the caption of these cases to reflect Alberto Gonzalez? Yes, you should. Actually, on the date that he was sworn in. What's his date of swearing in? I believe it was February 2nd. Can you let us know about that? Just let the clerk know. Telephone call will be fine. Okay. You think it's Feb 2nd? I think it is. Okay. I'll double check. Counsel? Mr. Frank? Yes. Good morning. Good morning, Your Honors. May it please the Court.
judges: Noonan, Thompson, Hawkins